IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 4, 2021

## BRIAN ADAMS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County
No. 13-00657    John Wheeler Campbell, Judge**

───────────

### No. W2020-00958-CCA-R3-PC

───────────

The Petitioner, Brian Adams, filed a petition for post-conviction relief challenging his convictions for rape of a child and aggravated sexual battery and the resulting ninety-year sentence. The post-conviction court denied relief, and the Petitioner appeals. On appeal, the Petitioner alleges that he received ineffective assistance of counsel because trial counsel failed to adequately cross-examine the victim and failed to object to hearsay evidence from hospital personnel. After our review, we affirm the judgment of the post-conviction court denying the Petitioner relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and JILL BARTEE AYERS, J., joined.

Benjamin Michael Israel, Memphis, Tennessee, for the appellant, Brian Adams.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### TRIAL

Following a trial, the Petitioner was convicted of rape of a child and aggravated sexual battery. See Tenn. Code Ann. §§ 39-12-504, -13-522. He was sentenced to a ninety-year sentence. See State v. Brian Adams, No. W2015-02066-CCA-R3-CD, 2016 WL 5819219 (Tenn. Crim. App. Oct. 5, 2016).

At the trial, J.M., the six-year old victim, testified that around the time of the incident, her mother moved her and her two brothers in with their grandmother. Adams, 2016 WL 5819219, at *1. The family lived with the grandmother for two to three months, and the grandmother would watch the children while the victim's mother worked. The Petitioner was a friend of the victim's grandmother and would visit the house often.

The victim testified that one evening, her grandmother left her in the bathroom after a nightly bath and that the Petitioner entered the bathroom. Adams, 2016 WL 5819219, at *1. The Petitioner placed the victim on the sink and touched and penetrated her vagina with his hand. The victim stated that it was painful. The victim immediately told her grandmother, and she assured the victim that she would tell the victim's mother about the incident.

The victim stated that at a later date, the Petitioner drove the victim, her brother, and her grandmother to a cellular telephone store. Adams, 2016 WL 5819219, at *1. The victim's grandmother and brother exited the car, and the Petitioner drove the victim to the side of the store. The Petitioner parked the car and led the victim behind the store. The Petitioner then pulled his pants down and put his "thingy" in her mouth, and he kept it there until he was finished "peeing." The victim testified that the "pee" was "yellow" and "gooey." She also testified that his "wiener" went down after he finished "peeing." The Petitioner returned the victim to the car when he heard the grandmother exit the store. The victim again told her grandmother about the incident. The victim asserted that she discussed these events with several people over the course of about three years, including her grandmother, her mother, her father, the staff at the Children's Advocacy Center ("CAC"), and the staff at the District Attorney's Office.

The victim's mother testified that the victim began to act differently after moving out of her grandmother's house. Adams, 2016 WL 5819219, at *1. The victim began to cry when questioned by her mother, and the victim informed her mother that the Petitioner had touched her. The victim's mother was unaware of who the Petitioner was at the time. Following the conversation, the victim's mother took the victim to the hospital. Upon arriving, the victim was examined by Dr. Karen Lakin. Dr. Lakin found no indication of physical injury. The victim also reported to Dr. Lakin that the Petitioner had touched her.

The victim was also transported to the CAC where she was forensically interviewed by Patricia Lewis. Adams, 2016 WL 5819219, at *1. The interview was recorded, and the victim discussed specifics of the touching. Ms. Lewis testified at trial that during the interview with the victim, the victim identified the cellular telephone store as a grocery store, said that she could hear her grandmother exit the store, and explained that she stood while the Petitioner was on his knees and inserted his penis into her mouth.

The victim's grandmother testified on behalf of the Petitioner. Adams, 2016 WL 5819219, at *2. She asserted that she did not allow the Petitioner to be near the victim or her brother while taking baths or changing clothes. She testified that she did not take the victim to a cellular telephone store, but did recall leaving the victim alone in the car with the Petitioner at a grocery store. She stated that the victim did not tell her of any inappropriate incident with the Petitioner, but admitted that her memory was "not so good." At the time of the incident, the victim's grandmother used mobility aides, including a cane, scooter, and walker. The victim's mother testified that she believed the victim's grandmother had serious memory issues, was not physically stable, and could not properly care for herself without help.

Following the Petitioner's convictions, he appealed. On direct appeal, the Petitioner argued that his convictions should be overturned on the basis of insufficient evidence because the victim's testimony was "too full of inconsistencies and farfetched facts to support his convictions." Adams, 2016 WL 5819219, at *2. This court concluded that the victim's detailed testimony regarding how and where the Petitioner touched her in two separate incidents was sufficient to support the Petitioner's convictions. Id. at *3. Additionally, this court observed that the victim had also reported these events to her grandmother, her mother, a physician, and a CAC forensic interviewer and that the jury was at liberty to accredit the testimony of these witnesses at trial. Id.

## POST-CONVICTION HEARING

The Petitioner filed a pro se petition seeking post-conviction relief on September 6, 2017, claiming ineffective assistance of counsel. Following the appointment of counsel, an amended petition was filed on January 12, 2018, alleging that the Petitioner was denied effective assistance of counsel because trial counsel: (1) gave "erroneous advice that effectively deprived" the Petitioner of his right to testify; (2) "failed to perform a thorough investigation"; (3) failed to timely file motions; (4) failed to impeach the victim; (5) failed to call witnesses; (6) failed to object to prejudicial evidence; and (7) failed to object to inadmissible hearsay. A second amended petition was filed on February 26, 2018, alleging that the Petitioner was denied effective assistance of counsel because trial counsel failed to meet with the Petitioner prior to trial, instructed the Petitioner not to speak to him during the trial which prevented the Petitioner from raising "important factual issues," and failed to have the Petitioner's competency evaluated.

At the post-conviction hearing, trial counsel testified that he had worked for the Public Defender's Office for ten years and had tried seven child rape cases. After trial counsel was appointed, he reviewed all investigative notes and interviewed some of the named witnesses. He recalled that a number of character witnesses had previously been

interviewed by a prior attorney, but trial counsel did not think any of the testimony from these witnesses would be admissible at trial.

Trial counsel met with the Petitioner several times before trial and spoke at length with the Petitioner about the Petitioner's decision to testify. Trial counsel prepared the Petitioner extensively concerning his eight prior sexual offenses and the risks of testifying. Trial counsel's defense strategy focused on the inconsistencies in the victim's testimony and forensic interview and inconsistencies in the victim's mother and grandmother's testimony. Trial counsel cross-examined all witnesses at trial.

Trial counsel recalled that the victim and the Petitioner had lived in the same neighborhood and that the victim's parents and the Petitioner did not have a good relationship. He also recalled that some neighbors were willing to support the Petitioner's theory of defense that the victim had been raped by someone else from the neighborhood. Trial counsel had an investigator interview a potential witness, Debbie Paul. Ms. Paul informed the investigator that "Black Brian" had touched the victim. Trial counsel was unable to corroborate the claim. However, trial counsel obtained a statement from another potential witness that "Black Brian" was not in the neighborhood at the time of the incident.

Trial counsel testified that the victim was actually examined by Dr. Kim Harris at the hospital and the medical report obtained in discovery was signed by Dr. Harris. Trial counsel asserted that he believed Dr. Lakin could testify to the medical report because of "a business record exception." At this point in the proceedings, the post-conviction court made an oral finding that although Dr. Lakin did not physically examine the victim when she was at the hospital, Dr. Lakin was qualified to testify about the hospital report because she was an expert and the medical record was used to "form an opinion."[1]

The Petitioner testified that he suffered from a number of mental health issues, including schizophrenia, manic depression, post-traumatic stress disorder, and bipolar disorder. He stated that he had surgery to remove a brain tumor in 2017. He asserted that trial counsel told him that if he testified at trial, the State would be able to cross-examine him about his prior convictions.

The post-conviction court denied the petition for post-conviction relief in a written order dated July 2, 2020. The post-conviction court concluded that trial counsel was prepared for trial, including engaging an investigator to find and interview witnesses, reviewing all discovery materials, and crafting a reasonable trial strategy. In addition, the

---

[1] The direct appeal opinion incorrectly states that Dr. Karen Lakin performed the physical examination of the victim.

court noted that trial counsel met with the Petitioner to discuss and prepare for trial on several occasions and that trial counsel introduced a witness at trial who contradicted the victim's statement. The court concluded that trial counsel's strategy to focus on inconsistencies while cross-examining the young and sympathetic victim was reasonable. Additionally, the court determined that the Petitioner failed to present any evidence or witnesses at the post-conviction hearing that could have possibly provided alternative theories of defense. The court found that the Petitioner failed to provide evidence of his poor or deteriorating mental health and did not find his testimony to be credible. Finally, the court concluded that the Petitioner's testimony was in direct contradiction to a jury-out hearing at trial during which the Petitioner affirmed that he had made an informed decision not to testify on his own behalf.

The Petitioner filed a timely notice of appeal. The case is now before us for review.

**ANALYSIS**

On appeal, the Petitioner argues that trial counsel was ineffective in cross-examining the victim and failing to object to hearsay evidence presented by Dr. Karen Lakin at trial. The State responds that the Petitioner has failed to prove that trial counsel was ineffective.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. Criminal Petitioners are constitutionally guaranteed the right to effective assistance of counsel. Dellinger v. State, 279 S.W.3d 282, 293 (Tenn. 2009) (citing U.S. Const. amend. VI; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688-89. When a court reviews

a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." Howell v. State, 185 S.W.3d 319, 326 (Tenn. 2006) (citing Strickland, 466 U.S. at 689). We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. Rhoden v. State, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991). We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)).

Although trial counsel does not have an absolute duty to investigate particular facts or a certain line of defense, counsel does have a duty to make a reasonable investigation or to make a reasonable decision that makes a particular investigation unnecessary. Strickland, 466 U.S. at 691. Counsel is not required to interview every conceivable witness. See Hendricks v. Calderon, 70 F.3d 1032, 1040 (9th Cir. 1995). Furthermore,

no particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel. Rather, courts must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct, and judicial scrutiny of counsel's performance must be highly deferential.

Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (internal citations and quotations omitted).

A reasonable investigation does not require counsel to "leave no stone unturned." Perry Anthony Cribbs v. State, No. W2006-01381-CCA-R3-PD, 2009 WL 1905454, at *49 (Tenn. Crim. App. July 1, 2009). Rather, "[r]easonableness should be guided by the circumstances of the case, including information provided by the Petitioner, conversations with the Petitioner, and consideration of readily available resources." Id. The United States Supreme Court has said, "[I]nquiry into counsel's conversations with the Petitioner may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions." Strickland, 466 U.S. at 691.

As to the prejudice prong, the petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Vaughn v. State, 202 S.W.3d 106, 116 (Tenn. 2006) (citing Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. "That is, the petitioner must establish that his counsel's deficient performance was of such a degree that it deprived him of a fair trial and called into question the reliability of the outcome." Pylant v. State, 263 S.W.3d 854,

869 (Tenn. 2008) (citing State v. Burns, 6 S.W.3d 453, 463 (Tenn. 1999)). "A reasonable probability of being found guilty of a lesser charge . . . satisfies the second prong of Strickland." Id.

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger, 279 S.W.3d at 293-94. On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. Because they relate to mixed questions of law and fact, we review the post-conviction court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

We agree with the post-conviction court that counsel was not deficient in his cross-examination of the victim. Trial counsel testified that he had been working for the Public Defender's Office for ten years and had worked on seven child rape cases before representing the Petitioner. He specifically testified that his strategy to cross-examine the victim was to point out inconsistencies in her forensic interview and her trial testimony. Trial counsel was aware that the victim was very young and very sympathetic. The Petitioner does not specify what further cross-examination or impeachment would have yielded. The record supports the post-conviction court's findings that counsel's cross-examination was tactical and based on adequate preparation. The Petitioner is not entitled to relief on this basis.

At the post-conviction hearing, the Petitioner failed to identify specific testimony by Dr. Karen Lakin that trial counsel should have objected to as hearsay. We cannot review evidence that was not presented at the post-conviction hearing for deficient performance. Despite the lack of evidence, the post-conviction court did make an oral finding that a hearsay exception existed for Dr. Lakin's testimony.

An exception to the rule against hearsay is set out in Tennessee Rule of Evidence 803(4): "Statements made for purposes of medical diagnosis and treatment describing medical history; past or present symptoms, pain, or sensations; or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis and treatment." In State v. Livingston, 907 S.W.2d 392 (Tenn. 1995), our supreme court held as follows:

The rationale for the medical diagnosis and treatment hearsay exception is that such declarations are deemed reliable because the declarant is motivated to tell the truth; that is, the declarant makes the statements for the ultimate purpose of receiving proper diagnosis and treatment. Generally, (1) the statement must be made for medical diagnosis *and* treatment; (2) the statement may include extensive information about symptoms, pain, or sensation; and (3) the statement is admissible only "insofar as reasonably pertinent to diagnosis and treatment.

We agree with the post-conviction court that counsel was not deficient in his failure to object to Dr. Karen Lakin's testimony regarding the victim's physical examination at the hospital. Even if Dr. Lakin did not perform the examination, the statements were made to diagnose or treat the victim and would qualify as an exemption to the hearsay rule.

## CONCLUSION

Based upon the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE